(Decided 11th January, 1884.)

John G. Mitchell, late Trustee *vs.* Paul S. Colburn.

*Breach of Trust—Trustee and Cestui que Trust—Fraud by*
*Trustee on Cestuis que Trust.*

A testatrix bequeathed to A. a conditional legacy of $3000, and after sundry bequests to other persons, devised the residue of her estate in trust for the benefit of P. for life, with remainder to his children. On a bill filed by A. against M., as substituted trustee under the will, to compel the payment of his legacy, a compromise was

Mitchell *vs.* Colburn.

effected by which A. agreed to settle his claim for $1100. This sum was accordingly paid to him by M., and upon its receipt he gave M. a release for $3360. After the payment of $1100 to A. and A's release of the whole legacy, further proceedings were had, upon which, and upon the admission and testimony of M. that the personal estate was found insufficient to pay the whole of said legacy, a decree was passed for the sale by M. of certain ground rents belonging to the trust estate. M. was afterwards removed from the trust, and in accounting with the trustee appointed to succeed him he claimed that the difference between the $1100 actually paid in settlement of the legacy, and the sum of $3360, for which the release was given, was in fact paid by him to P. the tenant for life of the trust estate. HELD:

1st. That as against the incoming trustee representing the parties in remainder, M. could not rely on a breach of trust committed by himself, although committed with the assent of P. the equitable tenant for life.

2nd. That it was the duty of M. as trustee to preserve and protect the trust estate for the benefit of all the parties in interest; and he had no right to permit the life tenant to receive and waste the *corpus* of the estate.

3rd. That the compromise of the legacy was a compromise which enured to the benefit of the trust estate; and the subsequent sale of the ground rents on the pretence that the sale was necessary to pay a large balance still due on the legacy, was a fraud upon the *cestuis que trust.*

4th. That as against the new trustee, representing the *cestuis que trust* under the will, it was no answer to say that the money derived from the sale of the ground rents was paid to P. the tenant for life.

5th. That in accounting with the new trustee all that M. had a right to claim of the $3360, was the $1100 actually paid by him in the settlement of the legacy.

APPEAL from the Circuit Court of Baltimore City.

This appeal was taken from an order finally ratifying the auditor's account D, and report, and sustaining the exceptions to the auditor's account E. Account D showed that the sum of $2755.94 was due the trust estate by the trustee John G. Mitchell. Account E, which was stated

under special directions in writing, from the trustee Mitchell, showed that there was due to him for overpayments made by him on account of the trust estate, the sum of $726.73.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., ROBINSON, IRVING, and BRYAN, J.

*A. H. Hobbs,* and *James A. Buchanan,* for the appellant.

*George G. Hooper,* and *Albert Ritchie,* for the appellee.

ROBINSON, J., delivered the opinion of the Court.

The testatrix, Julia M. Colburn, bequeathed to her brother-in-law, Augustus W. Colburn, a conditional legacy of three thousand dollars, and after sundry bequests to other persons, she devised all the rest of her property, in trust, the income thereof to be applied to the support and maintenance of her son, Paul S. Colburn, during his life, with remainder to his children, and in default of children, to certain devisees named in the will.

The appellant was subsequently appointed trustee to administer the trust declared by the will.

A controversy having arisen in regard to the payment of the legacy of three thousand dollars to Augustus W. Colburn, a bill was filed by him against the appellant as trustee, to enforce its payment out of the trust fund. After the case had been argued, and pending its decision, a compromise was made, whereby Augustus agreed to settle his claim to the legacy upon the payment of eleven hundred dollars. This compromise, his solicitors say, they were induced to make, because of an intimation by the Judge below adverse to the claim.

Having thus agreed upon a compromise upon the payment of $1100, an agreement was filed signed by Augustus through his solicitors, and by the appellant as trustee, and by Paul S. Colburn, one of the *cestuis que trust*, assenting to a decree in favor of Augustus for the payment of the *entire legacy of three thousand dollars*; and also to the passing of an order by the Court, directing the appellant, as trustee, to sell a water bond, part of the trust property, and any other property necessary to the payment of said legacy.

Upon this agreement a decree was passed for the payment of the legacy of three thousand dollars, with interest thereon, and directing the trustee to sell the water bond and other property in his hands for this purpose. The water bond was thereupon sold, the sale realizing $1890, and out of the proceeds, the $1100 agreed upon was paid to Augustus Colburn, and his release therefor was executed.

After this settlement, and after the execution of the release, an amended bill was filed by the solicitors of Augustus, through whom the settlement was made, setting forth an insufficiency of the personal estate in the hands of the trustee to pay the legacy, and praying for a sale of a part of the real estate for this purpose. These allegations, the appellant, as trustee, not only admitted, but in his testimony says, "there is no personal property in his hands to pay the legacy. There was a five per cent. water bond of the City of Baltimore for eighteen hundred dollars, and that was all in my hands with which to pay this legacy; and the Court passed an order directing it to be paid, but it was insufficient by between fifteen and seventeen hundred dollars."

Thereupon, a further decree was passed authorizing the appellant to sell certain ground rents, and to apply the proceeds to the payment of what might be due on the legacy after the application thereto of the proceeds from

the sale of the water stock.    Under this decree the ground rents were sold realizing $2100.

Although the amount paid to Augustus was only $1100, as agreed upon, the appellant took from him a release reciting the payment of $3360, and in his report of sales states that he had paid $3360 on account of said legacy. An account was then stated by the auditor, in which he was allowed the usual commissions on the sales of the water stock and ground rents, and also $3360, the amount claimed to have been paid by him on the legacy.

These are the undisputed facts in this case, and upon such facts as these, it cannot be a matter of surprise that the appellant was removed from the trust.

Now in accounting with George G. Hooper, the trustee appointed to succeed him, he claims that the difference between the $1100 *actually paid* in settlement of the legacy, *and the* $3360 audited to him on account of the same, was in fact paid by him to *Paul Colburn one of* the *cestuis que trust.*

We shall not stop to consider the proof on which these payments rest.    It is but proper to say, however, that it shows beyond question, that the breach of trust on the part of the appellant was committed with the assent and knowledge of Paul Colburn, and that a large part at least of the money derived from the sale of the ground rents was paid to him by the trustee.

Were this a proceeding in which Paul, one of the *cestuis que trust,* was solely interested, there might be some ground for saying that he was estopped from setting up the breach of trust, flagrant as it is.    No principle is better settled, than that a *cestui que trust,* will not be permitted to set up a breach of trust to which he has assented, and the fruits of which were received by him.    *Walker vs. Symonds,* 3 *Swanston,* 64 ; *Brice vs. Stokes,* 11 *Vesey,* 326 ; *Nail vs. Punter,* 5 *Simons,* 555 ; *Booth vs. Booth,* 1 *Beavan,* 125 ; *Lincoln vs. Wright,* 4 *Beavan,* 427.

Nor shall we stop to inquire whether the original bill, and the amended bill subsequently filed by Paul Colburn, are to be considered as a bill of review, or an original bill for fraud. We are dealing with a trust estate, the income of which was to be applied to the support and maintenance of Paul Colburn for life, with remainder to his children. Whatever may have been the form of the original proceeding, the record shows that the trustee appointed to succeed the appellant has intervened, and the proceeding is nothing more or less than an accounting between an *outgoing* and *an incoming trustee*. And as against the latter, representing the parties in remainder, it is clear the appellant cannot rely on a breach of trust committed by him, although committed with the assent of the tenant for life. It was his duty as trustee, to preserve and protect the trust estate for the benefit of all the parties in interest. He had no right to permit the life tenant to receive and waste the *corpus* of the estate. The compromise of the legacy was a compromise which enured to the benefit of the trust estate, and the subsequent sale of the ground rents on the pretence that the sale was necessary to pay a large balance still due on the legacy was a fraud upon the *cestuis que trust*. We say this because it is admitted that at the time the amended bill was filed and the decree thereon was passed for the sale of the ground rents, the appellant had in fact settled the legacy by the payment of $1100 according to the terms of the compromise, and had in his possession at that time the release of the legatee. As against the trustee now representing the *cestuis que trust* under the will, it is no answer to say that the money derived from the sale of the ground rents was paid to Paul Colburn, the tenant for life. In accounting with the present trustee, all the appellant has a right to claim is the $1100 actually paid by him in the settlement of the legacy. And this sum is allowed to him in audit D, ratified by the Court. The exceptions to this audit

were therefore properly overruled, and for the same reasons the exceptions to audit E, in which the appellant was allowed $3360 on account of the legacy to Augustus were properly sustained.

*Order affirmed.*

(Decided 25th January, 1884.)